Heinz W. KIRCHNER, d.b.a. Universe Company, Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 19096.

United States Court of Appeals Ninth Circuit.

Oct. 27, 1964.

Thomas B. Moore, Stearns, Gross & Moore, Whittier, Cal., for petitioner.

James McI. Henderson, General Counsel, J. B. Truly, Asst. Gen. Counsel, Alvin L. Berman, Paul R. Stone, Attorneys, Federal Trade Comm., Washington, D. C., for respondent.

Before HAMLEY, Circuit Judge, MADDEN, Judge of the Court of Claims, and DUNIWAY, Circuit Judge.

MADDEN, Judge:

We have before us a petition to review a cease and desist order issued by the

Federal Trade Commission against the petitioner. The Commission had issued a complaint charging the petitioner with engaging in unfair and deceptive acts and practices and unfair methods of competition in interstate commerce, in violation of the Federal Trade Commission Act. The pertinent sections of the Act are sections 45(a) (1), 45(a) (6) and 45(b) of Title 15 of the United States Code. Our jurisdiction to review the Commission's order is found in sections 45(c) and 45(d) of the same title.

The complaint alleged that the petitioner violated the statute by advertising his product, a swimming aid called "Swim-Ezy," as having certain desirable characteristics which it did not in fact have. A trial was had before a hearing officer of the Commission, entitled an Examiner; evidence was presented; the Examiner made findings supporting the Commission's complaint in most, but not in all, of its charges, and issued a cease and desist order against the petitioner. The petitioner appealed from the Examiner's findings and order to the Commission.

The Commission issued its order requiring, *inter alia*, that the petitioner cease and desist from representing, stating, or implying, in its advertising, that its Swim-Ezy device:

"(1) can or will prevent the user thereof from sinking, or render him unsinkable;

"(2) can or will assist the user thereof to float, or increase his buoyancy, unless * * * [petitioner] shall state, clearly and conspicuously and in immediate conjunction with any such representation, that such device is not a life preserver, and will not render the user thereof unsinkable, and should not be used in deep water by persons who cannot swim;

"(3) can or will protect the user thereof from the dangers associated with swimming or bathing, such as (but not limited to) the danger of

sudden cramps or other disabling pain;

"(4) can or will enable the user thereof to become or perform like a skilled, expert or champion swimmer."

In its petition to this court, the petitioner does not dispute the validity of an order of the Commission relating to its advertising of a money-back guarantee, and we have not included that part of the order in our above recital.

■■■ The petitioner contends that the Commission's orders Nos. 1, 2 and 3 are based upon the Commissioner's conclusion, which, the petitioner urges, is not supported by the evidence, that the Swim-Ezy device does not render the user "unsinkable." At the hearing, witnesses for the Commission testified that they had conducted experiments with the device and that the wearer did, in fact, sink. The Examiner and the Commission credited this evidence, and we cannot hold that it is not substantial. Even if it showed only that *some* users would sink but that most users would be unsinkable, that would not justify the petitioner in advertising its device to all potential users as making them unsinkable. The consequences to the sinkable users might be tragic.

■■ As to item (4) of the order, the petitioner urges that the Commission mistranslated the petitioner's advertisement that, when equipped with Swim-Ezy, "Poor swimmers look like champions," into a representation that, when so equipped, the users could perform like champions. Then, the petitioner complains, the Commission, in item (4) of its order quoted above, ordered the petitioner to cease and desist from making a misrepresentation which it had not, in fact, made. Counsel for the Commission say that this argument is not open to the petitioner, because the Examiner, in his report had attributed the same meaning to the advertisement which the Commissioner gave to it, and the petitioner in its appeal from the Examiner

to the Commission had not taken exception to that construction, by the Examiner, of the language of the advertisement. Regardless of the merits of that procedural question, we think the Examiner and the Commission were right. A person in the water equipped with a Swim-Ezy would not "look like a champion," as the advertisement said he would, unless he did something other than lie motionless in the water. If he did something else but had not learned to swim, and to swim well, he would not "look like a champion."

 The petitioner complains vigorously about the requirement in item (2) of the Commission's order that the petitioner must not advertise that its device will assist the user thereof to float, or will increase his buoyancy, unless the petitioner:

> "shall state, clearly and conspicuously and in immediate conjunction with any such representation, that such device is not a life preserver, and will not render the user thereof unsinkable, and should not be used in deep water by persons who cannot swim."

This order is drastic, and will subtract substantially from the customer appeal of the petitioner's advertising. The petitioner contends that it should be sufficient for it to enclose such a *caveat* in the package in which it ships the Swim-Ezy, or on a tag attached to it. If this were done, it would not discourage purchasers from buying the devices, but only from using them unwisely after they were bought and paid for. But there would be danger that the literature enclosed in the package might not be read, and, if it were read and heeded, there would be an element of misrepresentation about selling something through advertising and then, after the sale was accomplished, serving a warning which contradicted the representations made in the advertising.

The problem presented by this case is not a problem of puffing of wares which, at worst, have no dangerous potential.

If a non-swimmer or a poor swimmer equipped with a Swim-Ezy should "swim as far as you please," as one of the petitioner's advertisements invited him to do, he might never get back.

The order of the Federal Trade Commission is affirmed, and an order of the enforcement will be issued by this court.